THE PEOPLE, *ex rel.* John W. Mitchell, *vs.* THE SHERIFF OF NEW YORK.

A combination, between a party and his attorney, to prevent the court from compelling the production of important papers required as evidence, on a trial, by transferring such papers from one to the other, is, *it seems,* entirely distinct from a case where the confidential communications of a client are sought to be disclosed.

In no instance should such communications be disclosed, by an attorney and counsel, and the courts should carefully guard against any attempt to compel a counsel thus to betray the confidence of his client. But when the party and his counsel thus combine together to defeat the proper administration of justice, and seek to use this privilege as a cloak for that purpose, the act is not entitled to the protection of the court. *Per* INGRAHAM, J.

Where the papers sought for are required in evidence, and are needed for the purpose of identification, the counsel is, to that extent, bound to produce them ; even if he can be protected from disclosing their contents.

The party himself may be required to produce the papers, where they are in court and in the possession of his agent, the attorney.

On a *habeas corpus* in a case of commitment for a contempt, only two questions can be examined ; *first,* as to the jurisdiction of the court or officer making the commitment; and *secondly,* as to the form of the commitment. If the jurisdiction is undoubted, and the commitment is sufficient in form, and contains the cause of the alleged contempt plainly charged therein, the prisoner must be remanded, and the writ discharged. The court has no power to inquire into the justice or propriety of the commitment.

Nor can the supreme court review, upon *certiorari,* the judgment of a court ordering a commitment for a contempt.

ON *habeas corpus,* directed to the sheriff of the county of New York.

*By the Court,* INGRAHAM, J. The relator applied, by petition, for a habeas corpus, and on the return of the writ was brought before this court by the sheriff. The sheriff returns that he holds the prisoner by virtue of and according to the tenor, manner and command of a certain commitment for an alleged contempt, a copy of which was thereto annexed.

By such commitment it appears that in an action pending in the court of common pleas, for the recovery of a lot of land in the city of New York, one Betz had been examined as a witness on the trial thereof; that he was defending the action

as the landlord of the defendant ; that he was asked whether he had in his possession any deeds &c. relating to the land ; that he answered he had received from the grantors a lease and other papers, which, a few days before, he delivered to his counsel, the relator, who was also attorney for the defendant, and that he was unable to produce the papers, because they were in the possession of the said relator, who was then in court, and acting in the cause as attorney for the defendant. It also appeared that the relator was then called as a witness and was asked whether he had such papers in his possession, and delivered to him by Betz, and replied that he could not state, without examining a bundle of papers then in his possession in court ; and on being directed by the court to look at such papers, for the purpose of answering the question, refused to do so. And while the case was under consideration, the relator gave the bundle of papers to his client, with instructions to take them from the court. It is also stated that on a subsequent day the said relator was again examined in the same action, the trial having been adjourned to that time, and he then admitted that he had the papers in court, and he was asked and directed by the court to look at the papers so far as to identify them and to produce the papers, which he refused to do, giving as the reason that it would be a breach of privilege as the attorney for the defendant. It is also stated that such questions were pertinent to the issue, and for such refusal the relator was adjudged by the court of common pleas to be guilty of contempt. Upon these grounds the warrant of commitment was issued.

If we were to dispose of this question upon the merits, there could be but little difficulty in sustaining the order made by that court in granting the commitment. If a party and his counsel can, by transferring from the one to the other important papers required as evidence in a cause and thereby prevent the court from compelling the production of such papers on a trial, it will not be difficult in this way to defeat the administration of justice. Such a combination between a party

and his attorney might well, under the circumstances, be considered as entirely distinct from a case where the confidential communications of a client are sought to be disclosed. In no instance should such communications be disclosed by an attorney and counsel, and the courts should carefully guard against any attempt to compel a counsel thus to betray the confidence of his client. But when the party and his counsel thus combine together to defeat the proper administration of justice, and seek to use this privilege as a cloak for that purpose, the act is not entitled to the protection of the court. The counsel could at once have relieved himself of the responsibility by placing in his client's hands the papers called for by the court, instead of retaining the possession, and thereby defying the power of the court.

The papers sought for were required in evidence, and it appears were needed for the purpose of identification. Whether the party calling for them had secondary evidence of the contents, does not appear in the warrant. For such a purpose, it was necessary to show their existence, and that they could not be produced. To this extent, even if the counsel could be protected from disclosing their contents, he was bound to produce them. This point has been expressly adjudged in a similar case of *Phelps et al.* v. *Prew,* (24 *Law and Eq. R.* 96,) although in that case the additional fact appeared that the counsel stated, his client had directed him not to produce the deed. It was there held that the privilege of the client was not violated by requiring the attorney to produce the deed for identification. WIGHTMAN, J. says, "Compelling the production of the deed for the purpose of identification, was no violation of the privilege; it being necessary to show that the attorney had the deed, which he was required to produce." ERLE, J. said, the judge therefore was justified in compelling the production of the deed, in örder that the indorsement might be looked at. And CROMPTON, J. says, "There was no violation of privilege in directing the deed to be shown for the purpose of identification." And in *Dwyer* v. *Collins,* (21 *Law*

The People *v.* The Sheriff of New York.

*J. Rep., N. S.* 225,) it was held that an attorney of a party to a suit may be asked, and is bound to answer, whether a document, which he has received from his client, is in his possession, or elsewhere in the court. PARKE, B. says, "The privilege does not extend to matters of fact, which the attorney knows by any other means than confidential communication with his client; though if he had not been employed as attorney, he would not have known them. Thus he may prove the fact that a particular document is then in his possession and in court; for this is a fact not professionally disclosed to him. All these cases draw a distinction between answering as to the possession of the paper and producing it for identification, and as to disclosing the contents." (*See also Broad* v. *Pitt, Mood. & M.* 233, *and Ecke* v. *Nokes, Id.* 303.)

It is not necessary to inquire whether the contents of these papers could have been disclosed by the counsel. That the party himself should have been required to produce them, while they were in court, and in the possession of his agent, the attorney, would have been proper, and would have placed the responsibility on the one who should have borne the consequences of refusal.

Whether the ruling of the court was correct or not, we are of the opinion that the statute requires us to remand the prisoner in this case. By the 40th section of the statute as to writs of habeas corpus, (2 *R. S.* 567,) it is made the duty of the court forthwith to remand the party, if it shall appear that he is detained in custody ﹡ ﹡ ﹡ for any contempt specially and plainly charged in the commitment, by some court having authority to commit for the contempt so charged. And by the 42d section, the court is deprived of any power to inquire into the justice or propriety of any commitment for a contempt, made by any court, officer or body, according to law, and charged in such commitment.

That the common pleas had jurisdiction of the action and of the parties, is not denied. That the contempt was of a court having authority to commit for the same, cannot be

doubted. It is one for which any court, even not a court of record, can punish, viz. a refusal of a witness to answer a question which he is directed by the court to answer on the trial. The commitment is regular and sufficient in form, and contains the cause of the alleged contempt plainly charged therein.

I have had occasion heretofore to examine how far a court or officer can inquire into a case of a commitment for contempt, in the case of *Devlin.* In that case, which was before a justice of this court in a special proceeding, and not in court, it was held that only two questions could be examined; *first,* as to jurisdiction; and *secondly,* as to the form of the commitment. That rule is applicable to this case.

It is apparent that the court had authority to examine the witness; and in the language of Judge Bronson, in *The People* v. *Cassels,* (5 *Hill,* 165,) "if the justice had authority to inquire into the offense, the commitment could not be impeached upon *habeas corpus* for any supposed error in requiring the witness to answer an improper question. The contempt was specially charged, and it was the duty of the judge to remand the prisoner." And again he says, " It is evident that the legislature did not intend to provide for a retrial by *habeas corpus* in such a case." And the only inquiry allowed in that case, as in the case of *Devlin,* was as to the jurisdiction of the magistrate. As the jurisdiction in the present case is undoubted, and the commitment is sufficient in form, and contains all that the statute requires, we are of the opinion that the prisoner must be remanded and the writ discharged.

An application was made to the court yesterday for the allowance of the *certiorari,* in the same matter. Although we do not feel at liberty to refuse the allowance of the writ, if the relator desires, it under the provisions of the revised statutes which makes it always the duty of the court or judge to allow the writ, still we suppose the counsel will see from

our views in the above opinion, that for the reasons above stated we could not review the judgment of the common pleas in this matter, and that the issuing of that writ would be unavailing to the party. The writ also should be directed to the officer having the custody of the prisoner, and not to the judge who made the order, (*see* 52*d section;*) and the form of the writ, as given in the statute, (§ 30,) is only to return the day and cause of imprisonment, and not the proceedings.

If the writ of *certiorari* is desired, it will be allowed in the form directed by the statute.

[NEW YORK GENERAL TERM, May 2, 1859. *Davies, Ingraham* and *Sutherland,* Justices.]

