HOWARD A. MARTIN, Plaintiff, *v.* SPENCER S. PLATT
AND NATHAN C. PLATT, Impleaded with ANNIE R.
PLATT, as Executrix of WILLIAM H. PLATT, Deceased,
Defendants.

*When executors are liable personally, upon a written acknowledgment of their indebted-*
*ness, to a person who has rendered services for the benefit of the estate — a creditor is*
*not obliged to confine his claim to the estate — successive absences are to be deducted,*
*in the aggregate, from the period prescribed by the statute of limitations.*

In an action, brought by an accountant to recover the sum of $7,000, and interest
thereon, for services rendered by him in an action between the executors of
Nathan C. Platt, deceased, and one George W. Platt, for an accounting, and
to have certain deeds of real estate declared null and void, it appeared that, on
January sixteenth, the plaintiff presented a bill, addressed "The executors of
Nathan C. Platt, deceased, to Howard A. Martin, Dr.," reciting his services in the
said action, under which was written the following: "The above bill has been
examined by us and the amount due to Howard A. Martin adjusted at seven
thousand dollars, and we hereby consent and agree that the sum be paid out of
the first proceeds of the judgment against George W. Platt, as a part of the
expenses and necessary disbursements in the action, by means of which the judg-
ment is recovered and the money obtained." This was signed by Spencer S.
Platt, William H. Platt, (the testator of the defendant Annie R. Platt), and
by Nathan C. Platt, as executors, and acknowledged before a commissioner of
deeds December 12, 1879.

Upon a motion for a new trial, upon exceptions ordered to be heard in the first
instance at the General Term, after a verdict for the amount claimed with
interest had been rendered in favor of the plaintiff against the defendants, it
was urged by the latter that the evidence did not warrant individual judgments
against them, as it appeared by the instruments signed by them that the services
were rendered to the executors, as such, for the benefit of the estate, and that
an adjustment had been made of the same as a charge against the estate, payable
out of a particular fund.

*Held,* that as an examination of the paper showed that there was an acknowledgment of a debt due to the plaintiff, which preceded the consent and agreement as to the mode of payment, it was not a promise to pay out of a particular fund, but an agreement that the amount claimed to be due should be first paid out of the proceeds of an anticipated judgment, as a part of the expenses and necessary disbursements in the action in which the judgment was recovered and the money obtained.

That where there is no agreement on the part of the creditor to look to or to confine his claim for compensation to the estate itself, or to the defendant in his official capacity, the executor will be held personally responsible for the payment of the claim.

*Foland* v. *Dayton* (40 Hun, 563) followed.

It was claimed by the defendant Nathan C. Platt that the action was not brought within the period of time allowed by law.

*Held,* that as it was shown that he had departed from the State and remained absent therefrom for a period which, if his successive absences from the State were accumulated, and the aggregate thereof was deducted from the period of limitation, prevented the application of the statute, this defense could not be sustained.

That the claim made by the defendant Nathan C. Platt, that so long as he did not intend to change his place of residence, and did not vote anywhere except in New York, nor describe himself as a resident of any other place than New York, and was never continually absent for one year at any one time, and as he was obliged to go out of the State of New York to find employment, and left with no intention of abandoning New York as his permanent home, the statute of limitations continued to run in his favor during the whole time of his absence, could not be sustained.

*Denny* v. *Smith* (18 N. Y., 567) followed.

Upon the trial, the testimony of William R. Martin, the attorney of the defendants in the action of *Platt* v. *Platt*, to the effect that his clients directed him to employ the plaintiff to render the services, to recover for which this action was brought, was received against the objection and exception of the defendants.

*Held,* that it was properly received, as it was in no sense a confidential communication or within the prohibition of section 835 of the Code of Civil Procedure, for the reason that it was made for the express purpose of being communicated to the plaintiff, who under the authority thus given was to be employed on behalf of the defendants.

That a direction by the executors to their attorney to employ a person in connection with the prosecution of an action, in which they are engaged, is not a confidential communication in the sense in which that word is used in that section, as in conducting the suit, as regards a third person, the attorney acts as the agent and not the attorney of his client.

Cases upon this subject collated by Brady, J., and the cases of *Bacon* v. *Frisbie* (80 N. Y., 394); *Root* v. *Wright* (84 id. 74) distinguished.

Motion made by Spencer C. Platt and Nathan C. Platt, two of the defendants, for a new trial upon exceptions taken at the New

York Circuit, and there directed to be heard at the General Term in the first instance, after a verdict had been rendered in favor of the plaintiff November, 1887.

The action was brought to recover the sum of $7,000 and interest. In 1867 Spencer C. Platt, Nathan C. Platt and William H. Platt (the latter of whom died in 1884), as executors of their father, Nathan C. Platt, deceased, brought an action in this court against George W. Platt for an accounting, and to have certain deeds of valuable real estate, in this city and elsewhere, executed by their father to the said George W. Platt, declared null and void. They succeeded in recovering an interlocutory judgment on March 17, 1873, directing an accounting of the partnership affairs of Platt & Brother and of all the property of said Nathan C. Platt which came into the hands of George W. Platt, and appointing E. H. Pomeroy, Esq., referee, to take and state the accounts and ascertain and report the amount due the plaintiffs from defendant, and that upon the coming in and confirmation of said report plaintiffs have judgment for such sum.

The reference before Mr. Pomeroy proceeded during the years 1873, 1874, 1875, 1876, 1877 and 1878. During this period, and upon such reference, and in preparing for the arguments at the Special Term, this plaintiff, at the request of said executors, rendered services as an expert accountant. While those services were being rendered an action was commenced in the Superior Court by Catharine W. Cooke against the executors, as such and individually, in which action James M. Smith was appointed receiver of the estate of Nathan C. Platt in place of the three executors, who were removed by the judgment therein, and were enjoined from further dealing with the estate. Subsequently, and before the final judgment was recovered in *Smith* v. *Platt*, and while the amount due the plaintiff remained unpaid, the executors, as such, made, executed and delivered to the plaintiff the following paper :

NEW YORK, 16th *January*, 1879.

THE EXECUTORS OF NATHAN C. PLATT, DECEASED, TO HOWARD A. MARTIN, *Dr.*

For the following services rendered to them in their action in the Supreme Court against George W. Platt, during the years 1874, 1875, 1876, 1877 and 1878, viz. :

The examination and analysis of the accounts of the firm of Platt & Brother, and of the accounts filed in the action by the defendant; the preparation of the accounts and balance-sheets for use on the reference and the arguments at Special Term, and for clerical assistance in preparing arguments, cases, indexes, etc., during the said period, the sum of $7,000.

The above bill has been examined by us and the amount due to Howard A. Martin adjusted at $7,000; and we hereby consent and agree that the same be paid out of the first proceeds of the judgment against George W. Platt, as a part of the expenses and necessary disbursements in the actions, by means of which the judgment is recovered and the money obtained.

> SPENCER C. PLATT, *Executor.*
> W. H. PLATT, *Executor.*
> NATHAN C. PLATT, *Executor.*

It was acknowledged before a commissioner of deeds, December 12, 1879.

The actions referred to as the means by which the judgment was to be recovered and the money obtained were the actions of *Smith* v. *Platt* and of *Cooke* v. *Platt.*

The action of *Platt* v. *Platt* was continued in the name of James M. Smith, as receiver of the estate, and resulted in the entry of final judgment in his favor, on September 15, 1881, confirming the referee's report, and for the recovery of $9,354.43 against the executors of George W. Platt, who had in the mean time died.

The answer admits that this judgment was paid to the receiver, March 4, 1886, by being applied on a judgment recovered against him. The total receipts of the receiver from January 24, 1881, were $77,416.34.

From April 5, 1883, to April 27, 1886, Susan F. Platt, the assignee of Spencer C. Platt, was paid by the receiver $5,025, and Nathan C. Platt $5,025. Subsequently other amounts were divided among the heirs of Nathan C. Platt.

The real estate referred to in the interlocutory judgment has also been sold in partition and the proceeds ordered distributed among the devisees and heirs-at-law of Nathan C. Platt, deceased, three of whom are the defendants here.

The present action was begun May 10, 1886. The complaint sets forth the Platt litigation in detail, the employment of plaintiff, the rendition of services and the adjustment of the amount due him at $7,000, payment of the final judgment; that the said executors are personally liable to plaintiff under the adjustment, demand and non-payment of the claim; the death of William H. Platt, one of the executors, leaving a will, its probate and the issue of letters testamentary to the defendant Annie R. Platt.

The answer of Spencer C. Platt and Nathan C. Platt concedes, substantially, the facts pertaining to the Platt litigation; denies the employment of the plaintiff and his alleged services and their value; admits the execution of Exhibit A, but avers that it was done for a special purpose; admits the payment to the receiver of the judgment recovered against George W. Platt or his representatives, and denies that there were ever any proceeds of the judgment (of September 15, 1881), in *Platt* v. *Platt*, except the amount of said judgment paid to the receiver, as above stated. The answer also alleges that the claim is barred by the six-years statute of limitations. (Code, § 400.)

The case came on for trial before Mr. Justice ANDREWS and a jury on November 10, 1887, which found all the facts in favor of the plaintiff, and rendered a verdict in his favor for $7,000 of principal and $3,703 interest. The court thereupon directed that the exceptions be heard, in the first instance, at the General Term, and that the entry of judgment be meanwhile suspended.

*E. S. Clinch*, for the plaintiff.

*W. G. Wilson*, for the defendants.

BRADY, J.:

The learned judge, upon the conclusion of the evidence, charged the jury, as appears from the record. The charge is not set forth, and it must be presumed that all the issues were presented, and the rules of law by which the jury were to be governed correctly stated. After the verdict the court said that, if the counsel desired, a direction would be made that the exceptions be heard in the first instance at the General Term, or they might make a motion for a new trial,

and it was thereupon ordered that the exceptions be heard in the first instance at the General Term.

On the hearing of exceptions in the first instance, questions of fact are not open to discussion, nor, indeed any questions other than those of law raised by the exceptions taken. The verdict is conclusive as to all the facts in issue on the pleadings. (*Hotchkins* v. *Hodge*, 38 Barb., 47; *Price* v. *Keyes*, 1 Hun, 182.) Among the facts thus put in issue were the employment of the plaintiff by the executor, the value of his services, the purpose for which the adjustment of the value of the services was made, the personal liability of the executors, and the absence of Nathan C. Platt from the State, as a bar to the defense of the statute of limitations. It must be assumed, as already intimated, that all these facts were found in favor of the plaintiff by the jury.

It appears that the defendants, including Nathan C. Platt, who was dead at the time of the trial, signed an instrument, which is as follows:

NEW YORK, 16*th January*, 1879.

THE EXECUTORS OF NATHAN C. PLATT, DECEASED, TO HOWARD A. MARTIN, *Dr.*

For the following services rendered to them in their action in the Supreme Court against George W. Platt during the years 1874, 1875, 1876, 1877 and 1878, viz.: The examination and analysis of the accounts of the firm of Platt & Brother and of the accounts filed in the action by the defendant; the preparation of the accounts and balance sheets for use on the reference and arguments at Special Term and for clerical assistance in preparing arguments, cases, indexes, etc., during the said period, the sum of $7,000.

The above bill has been examined by us and the amount due to Howard A. Martin adjusted at $7,000; and we hereby consent and agree that the same be paid out of the first proceeds of the judgment against George W. Platt, as a part of the expenses and necessary disbursements in the action, by means of which the judgment is recovered and the money obtained.

SPENCER C. PLATT, *Executor.*
W. H. PLATT, *Executor.*
NATHAN C. PLATT, *Executor.*

And that formed the chief initiatory evidence on behalf of the plaintiff.

The objection *in limine*, urged against the plaintiff's right to recover, is that the evidence does not warrant individual judgments against the defendants, inasmuch as it appears from the instrument, signed by them, that the services were rendered to the executors as such for the benefit of the estate, and an adjustment of the same as a charge against the estate, payable out of a particular fund.

It will be observed, however, upon close scrutiny of that paper, that there is an acknowledgment of the debt due to the plaintiff, which precedes the consent and agreement as to the mode of payment. It is not a promise, therefore, to pay out of a particular fund, but an agreement that the amount admitted to be due should be paid first out of the proceeds of an anticipated judgment, as a part of the expenses and necessary disbursements in the action, by means of which the judgment was recovered and the money obtained. It was as if the defendant said to the plaintiff "we owe you $7,000, and we will appropriate a sum sufficient to pay it out of the first proceeds of the judgment in this action," *i. e.*, the action in which the services were rendered. There is nothing, therefore, in that instrument from which it may be inferred that the services rendered to the defendants were to be paid for out of the estate, and that he was employed by them as executors *eo nomine*, and in no other respects. And it disposes of another proposition, namely, that the remedy of the plaintiff was in pursuit of the particular fund referred to in the instrument, to be accomplished by an equitable proceeding.

The liability of executors for services rendered to the estate was considered in *Foland* v. *Dayton* (40 Hun, 563), in which the cases bearing upon the subject were collated and compared. In that case the court said: "What these cases, considered together, require that the law shall be held to be is, that the administrator himself will be personally liable for the value of services rendered at his instance for the benefit of the estate, where there is no agreement on the part of the creditor to look to or confine his claim for compensation to the estate itself, or the defendant in his official capacity. Where services are rendered under such an employment or agreement, then the party rendering them will not be at liberty afterwards

to resort to the personal representatives, individually, but he will be confined to the rights or remedies existing for the enforcement of the agreement as it has been made by him; and if, by the agreement, he has confined himself to the estate as his debtor, or the personal representatives administering it, he will not be permitted to maintain an action for the recovery of his demand against the personal representative himself, individually. To produce this result the agreement of the plaintiff may be established as other agreements are allowed to be proved in courts of justice. That may be done by the language used on the occasion when the agreement is alleged to have been made, or by circumstances disclosing its nature and effect. Whether the plaintiff can maintain the action must, therefore, depend upon what the contract shall appear to have been under which the services were rendered. A mere intention to look to the estate or the defendant, as administrator, is not sufficient to exclude his individual liability; but an agreement on the part of the plaintiff, either express or to be inferred from the circumstances, to look to the estate or the administrator, as such, for his compensation, will prevent him from maintaining his action to recover against him individually." It seems to be established, therefore, that where there is no agreement on the part of the creditor to look to or to confine his claim for compensation to the estate itself, or to the defendant in his official capacity, the executor will be held personally responsible.

The further proposition on behalf of the defendant Nathan C. Platt, that the action was not brought within the period allowed by law, has no merit, for the reason that he is shown to have departed from the State and remained absent therefrom for a period which prevented the application of the statute. The successive absences from the State can be accumulated and the aggregate deducted from the period of limitation. (Cole v. Jessup, 10 N. Y., 107.)

The defense, in that respect, proceeded upon the theory that, so long as Nathan C. Platt did not intend to change his residence, and did not vote any where else except in New York, or describe himself as a resident of any other place than New York, or was never absent continuously for one year at a time, and because he was obliged to go out of the State to find employment and left with no intention of abandoning New York as a permanent home, the statute of limita-

tions was running in his favor during the whole time of his absence. But this is an erroneous view. The Court of Appeals, in *Denny* v. *Smith* (18 N. Y., 567), declared it to be the manifest intention of the legislature to subject every debtor, during a period of six years after the accruing of a debt, to the reach of civil process at the suit of his creditor, and the court held that the absence of a debtor from the State suspended the running of the statute. The statute contemplates actual absence, and occasional returns will not alter the case. (*Frost* v. *Brisbin*, 19 Wend., 14; *Haggart* v. *Morgan*, 5 N. Y., 422; *Bell* v. *Pierce*, 51 id., 15; *Mayor* v. *Genet*, 4 Hun, 487, 489.)

The objection to the testimony of William R. Martin was properly overruled. His testimony was to the effect that his clients, the defendants, directed him to employ the plaintiff to render the services to recover for which this action was brought. What he said was in no sense a confidential communication, or within the prohibition of section 835 of the Code. It was made for the express purpose of being communicated to the plaintiff, who, under the authority thus given, was to be employed on behalf of the defendant. A direction by executors to their attorney to employ a person in connection with the prosecution in which they are engaged is not a confidential communication in the sense in which that word is used in the Code.

It must be said, also, that, in conducting the suit, so far as regards third persons, the attorney is the agent of his client, and the relation is simply that of principal and agent. (*Bonynge* v. *Field*, 81 N. Y., 159; *Judson* v. *Gray*, 11 id., 408; *Covell* v. *Hart*, 14 Hun, 252; *Hebbard* v. *Haughian*, 70 N. Y., 55; *Whiting* v. *Barney*, 30 id., 330; *Rosenburg* v. *Rosenburg*, 40 Hun, 91; *Foster* v. *Wilkinson*, 37 id., 244; *Mulford* v. *Muller*, 1 Keyes, 31; *Hampton* v. *Boylan*, 46 Hun, 51.)

There is nothing in the decision in *Bacon* v. *Frisbie* (80 N. Y., 394) and *Root* v. *Wright* (84 id., 72) at all in conflict with the proposition just stated. These cases, it is true, illustrate the rule as one of great strictness when the subject is properly embraced within what is called a communication. This vigor is not, however, of late occurrence; it has been theoretically and practically enforced since the establishment of the profession itself.

The view taken of this case renders it unnecessary to consider whether there was evidence sufficient to show that a fund had been

created by judgment out of which the plaintiff was to be paid. The executors being individually liable it was not necessary for the plaintiff's case to establish the existence of any such fund, assuming that the written acknowledgment which they signed contained any such condition. But, as we have seen in the interpretation given to that paper, the existence of the fund was not a condition of the indebtedness or payment, but a promise to appropriate a certain fund to its liquidation when received.

Exceptions overruled, and judgment for plaintiff ordered, with costs.

DANIELS, J., concurred; BARTLETT, J., concurred in the result.

Judgment for plaintiff, with costs.